## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RANDY LIEBICH, | ) | **JURY TRIAL DEMANDED** |
| *Plaintiff*, | ) | Case No. |
| *v.* | ) | |
| JOSEPH DELGIUDICE, GREGORY FIGIEL, EDWARD KUNZ, THOMAS SZALINSKI, BORIS VRBOS, RAY BRADFORD, ROBERT LIEBICH, PAUL SEVERIN, LORENZO MUÑOZ, COUNTY OF DUPAGE, and VILLAGE OF ROSELLE. | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiff, RANDY LIEBICH, by and through his attorneys LOEVY & LOEVY,

complains of Joseph DelGiudice, Gregory Figiel, Edward Kunz, Thomas Szalinski, Boris Vrbos,

Ray Bradford, Robert Liebich, Paul Severin, Lorenzo Muñoz, County of DuPage, and Village of

Roselle, stating as follows:

### INTRODUCTION

1.      Randy Liebich lost 16 years of his life because he was wrongfully convicted of a

supposed crime he did not commit.

2.      Defendants caused this wrongful conviction.

3.      Defendants knew that the evidence, including the medical evidence, showed that

Randy had not committed the crime for which they falsely implicated him: the purported murder

of a two-year-old boy.

4.      Despite this knowledge, Defendants decided to frame Mr. Liebich for the boy's supposed murder.

5.      To do this, among other things, Defendants coerced Mr. Liebich into making statements that were used to falsely implicate him at trial, fabricated evidence of his guilt, and suppressed evidence showing his innocence.

6.      Their plan worked; Mr. Liebich was wrongfully convicted of the crime and sentenced to 65 years in prison.

7.      Mr. Liebich was just 22 years old when his incarceration began.

8.      While in prison, Mr. Liebich continuously insisted on his innocence and worked tirelessly to prove it.

9.      Mr. Liebich's conviction was eventually vacated and all charges against him were dropped, but not until he had spent 16 years behind bars as an innocent man.

10.     Mr. Liebich brings this action pursuant to 42 U.S.C. § 1983 and Illinois law in order to hold Defendants accountable for their misconduct and for violating Plaintiff's constitutional rights, as well as to redress the pain, suffering, and loss of liberty that Defendants caused him.

**JURISDICTION AND VENUE**

11.     This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to redress the Defendants' tortious conduct and their deprivation of Mr. Liebich's rights secured by the U.S. Constitution.

12.     This Court has jurisdiction of Mr. Liebich's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper under 28 U.S.C. § 1391(b). Mr. Liebich resides in this judicial district. The events and omissions giving rise to Mr. Liebich's claims occurred within this judicial district, including the investigation, prosecution, and trial resulting in Mr. Liebich's conviction. In addition, many, if not all, of the Defendants reside in this judicial district.

## PARTIES

14.     Plaintiff Randy Liebich is a 40-year-old Illinois resident who spent 16 years of his life wrongfully incarcerated for a crime that he did not commit.

15.     At all times relevant to the events described in this Complaint, Defendants Joseph DelGiudice, Gregory Figiel, Edward Kunz, and Thomas Szalinski (collectively, "Defendant DuPage Officers") were law enforcement officers in the DuPage County Sheriff's Office.

16.     At all times relevant to the events described in this Complaint, Defendant Robert Liebich was a law enforcement officer with the Roselle Police Department.

17.     At all times relevant to the events described in this Complaint, Defendants Boris Vrbos and Ray Bradford were investigators with the DuPage County Children's Advocacy Center.

18.     Each and every individual Defendant officer and investigator acted under color of law and within the scope of his employment at all times relevant to this lawsuit. Each of the individual Defendants is sued in his individual capacity unless otherwise noted.

19.     At all times relevant to the events described in this Complaint, Defendants Paul Severin and Lorenzo Muñoz were healthcare providers at Rush University Medical Center. Defendants Severin and Muñoz acted in concert with the Defendant officers and investigators at all times relevant to this lawsuit, and thereby acted under color of law.

20.    The Defendant County of DuPage is an Illinois municipal corporation that is or was the employer of Defendants DelGiudice, Figiel, Kunz, Szalinski, Bradford and Vrbos. At all times relevant to the events described in the Complaint, each of these Defendants acted as agents or employees of the County of DuPage. The County is liable for all torts committed by these Defendants pursuant to the doctrine of *respondeat superior*.

21.    The Defendant Village of Roselle is an Illinois municipal corporation that is or was the employer of Defendant Robert Liebich. At all times relevant to the events described in the Complaint, Robert acted as an agent or employee of the Village of Roselle. The Village of Roselle is liable for all torts committed by Defendant Robert Liebich pursuant to the doctrine of *respondeat superior*.

## RANDY AND KENYATTA'S FAMILY

22.    In late January 2002, Randy Liebich and his girlfriend of two years, Kenyatta Brown, were living together in DuPage County. They had just had a baby girl, who they named Angelique.

23.    Kenyatta had a son from a previous relationship, named Steven Quinn Jr. Steven was born when Kenyatta was fifteen years old.

24.    For most of his life, Steven lived with Kenyatta's mother or aunt, but he had stayed with Randy and Kenyatta at various times.

25.    On February 2, 2002, several days after Angelique was born, Steven came to stay with Randy, Kenyatta, and Angelique at their apartment in DuPage County.

26.    The four were living together as a family.

## STEVEN'S DEATH

27.     Between February 2 and February 7, 2002, Kenyatta and Randy cared for Steven and Angelique together at their apartment. When Randy went to work, Kenyatta would watch the children alone. Because Kenyatta had not yet returned to work after giving birth, Randy was never in charge of watching the children by himself and only Kenyatta provided solo care.

28.     During that time, Steven was feeling sick and crying frequently. He was reluctant or unwilling to eat his food, and was quieter and less energetic than usual.

29.     On February 8, Kenyatta went back to work for the first time since Angelique's birth.

30.     When Kenyatta returned from work that afternoon, Randy and the children were napping. Kenyatta went to greet Steven where he was laying on a blanket, and noticed that he was behaving strangely. When Kenyatta spoke to him, he did not respond.

31.     Randy and Kenyatta decided to take Steven to the emergency room at Mt. Sinai Hospital.

32.     When they arrived at the emergency room, Steven was seen immediately by hospital staff. He was transferred to Rush Medical Center to receive more specialized care.

33.     At Rush, Steven underwent neurosurgery and other emergency care.

34.     At some point after being admitted to Rush, Steven was determined to be brain dead. He was kept on life support for several days, but tragically passed away on February 11, 2002.

35.     The cumulative medical evidence from Steven's surgery, care, and autopsy showed that Steven did not have a traumatic head injury.

36.     Rather, the evidence showed that Steven suffered abdominal injuries and/or infection, which resulted in an hypoxic-ischemic brain. In other words, Steven's abdominal problems caused a lack of oxygen to his brain, which caused his brain to swell.

37.     The evidence further showed that Steven's abdominal injuries could not have occurred on February 8—the date that Mr. Liebich was watching Steven alone—but rather occurred at least several days *prior* to that date.

## THE INVESTIGATION INTO MR. LIEBICH

**Defendants Fabricate and Falsify Medical Evidence Against Randy Liebich**

38.     Because Mr. Liebich had been alone with Steven on February 8, the day that he was brought to the hospital, Defendants immediately decided he had caused Steven's injuries and focused their investigation on him.

39.     Despite the fact that the medical evidence showed that Mr. Liebich could not have caused Steven's death, Defendants agreed to fabricate medical evidence to implicate him.

40.     Defendant Figiel and other Defendant DuPage Officers met with Defendants Severin and Muñoz, and they agreed to provide false reports and opinions to point the finger at Mr. Liebich as responsible for Steven's death.

41.     Among other things, Defendants Severin and Muñoz provided reports and opinions that Steven suffered from a traumatic brain injury caused by physical force, and that his injury occurred on February 8, 2002.

42.     These reports and opinions, which were used against Mr. Liebich in his criminal proceedings, were false. Steven did not suffer a traumatic brain injury resulting from physical force. Steven's death was caused by abdominal injuries and/or infection, which resulted in an

hypoxic-ischemic brain. Moreover, Steven's abdominal injuries and/or infection occurred before February 8, 2002.

43.     Defendants did not stop at fabricating medical evidence. They also sought to obtain false and fabricated statements from Mr. Liebich.

**Defendants Fabricate and Falsify Supposedly Inculpatory Statements from Randy Liebich**

***February 8 & 9, 2002 Interrogation***

44.     Around 11pm on February 8, Randy was sitting in the waiting room at Rush Hospital with Kenyatta, Angelique, and other family members. They had already been at the hospital for hours and were waiting for an update on Steven's condition.

45.     Around 11:20pm, Defendant Figiel and Investigator Vrbos approached Mr. Liebich, took Angelique away from him, and told him to follow them to a conference room to be interviewed. They brought him into a small conference room, sat him down in a chair, and positioned themselves between him and the only door so that he could not leave.

46.     From that moment until approximately 4:40pm the next day, Mr. Liebich was detained and interrogated by Defendants Figiel, Vrbos, Bradford, Szalinski, and Kunz.

47.     In total, Mr. Liebich was detained and questioned for over 17 hours.

48.     Mr. Liebich was moved to various locations, including the DuPage County Sheriff's Office, but he was never permitted to leave the Defendants' custody.

49.     When Mr. Liebich tried to leave to see his family and learn how Steven was doing, he was physically pushed back into his chair by Defendants.

50.     Mr. Liebich repeatedly asked to use the phone to call his family, but each time this request was denied. He was finally permitted to use a telephone to call his mother at approximately 2pm on February 9—fifteen hours after he was first detained.

51.     Mr. Liebich also asked multiple times to be given access to a phone to call an attorney.

52.     These requests were similarly ignored.

53.     Mr. Liebich attempted to exercise his right to remain silent and told the Defendants he did not want to answer any more questions.

54.     Defendants did not permit Mr. Liebich to stay silent, and continued to question him aggressively.

55.     While interrogating Mr. Liebich, Defendants physically intimidated him and put their hands on him, including forcefully squeezing his neck.

56.     In the morning of February 9, Mr. Liebich became ill and vomited because he had been unable to take his medication.

57.     Mr. Liebich told the Defendants he was ill and that he needed his medication.

58.     The Defendants did not provide him with his medication

59.     Instead, they continued to question him.

60.     The Defendants used Mr. Liebich's family to psychologically manipulate him into providing a false confession.

61.     For example, the Defendants repeatedly threatened Mr. Liebich that he would never see his newborn daughter again if he did not cooperate with the Defendants and tell them what they wanted to hear.

62.     At some point during his detention, Mr. Liebich's parents came to the DuPage County Sherriff's Office to see their son, but the Defendants would not permit them to see Mr. Liebich and instead sent them away.

63.     Throughout the 17.5 hour interrogation, Defendants aggressively questioned Mr. Liebich, insisting that he had hurt Steven and demanding to know why and what had happened.

64.     In response, Mr. Liebich repeatedly told the Defendants, truthfully, that he did not hurt Steven.

65.     Statements that Mr. Liebich made during the interrogation that the State contended were incriminating were introduced at trial.

66.     At least in part because of these statements, Mr. Liebich was ultimately wrongfully convicted of Steven's murder.

*February 13, 2002 Interrogation*

67.     On February 13, Defendants Figiel and Bradford, along with Assistant State's Attorney David Imielski, came to the home of Mr. Liebich's parents, where Mr. Liebich was staying.

68.     The Defendants took Mr. Liebich back to the Hanover Park Police Department despite his insistence that he did not want to go and did not want to speak with them.

69.     The Defendants again interrogated Mr. Liebich for over two hours and repeatedly insisted that he had hurt Steven.

70.     Mr. Liebich again denied ever hurting Steven.

*February 14, 2002 Interrogation*

71.     On February 14, Mr. Liebich learned that the Defendants had put out an alert attempting to locate Mr. Liebich, and that TV news stations were reporting that he was "on the run."

72.     This was not true. Mr. Liebich was communicating with Defendants and staying at the home of his mother and stepfather. Defendants deliberately falsified this alert in an attempt to threaten, coerce, and smear Mr. Liebich.

73.     On February 14, Robert Liebich, Randy's cousin, interrogated Randy Liebich. Dion Liebich, another cousin to Robert and Randy, was also present.

74.     At the time, Robert Liebich was a law enforcement officer with the Roselle Police Department.

75.     Robert brought Randy and Dion into an interrogation room at the Roselle Police Station, even though Randy did not want to speak inside the station.

76.     Robert began to interrogate Randy. Robert did not Mirandize Randy before questioning him.

77.     Robert was angry and repeatedly demanded to know what happened to Steven.

78.     When Randy insisted that he did not hurt Steven, Robert told him he was lying.

79.     Robert made Randy swear on their fathers' graves that he was telling the truth about what happened. Randy did, and continued to maintain that he did not hurt Steven.

80.     After the interrogation, Robert wrote a summary report.

81.     The summary report fabricated supposed details of what Randy told Robert, including by omitting information such as, among other things, details about Steven choking on the hotdog and Randy's explanation that Steven was not feeling well during the week before they took him to the hospital.

82.     This information was significant and material, and would have shown that Randy did not hurt Steven.

83.     The information was also omitted from Robert's testimony at trial.

84.     Randy's conviction was based, in part, on Robert's interrogation of Randy and his falsified and fabricated reports of that interrogation.

## MR. LIEBICH'S EXONERATION

85.     Following his conviction, Mr. Liebich never stopped trying to prove his innocence.

86.     In post-conviction proceedings, multiple expert witnesses provided testimony that Steven's death was caused by abdominal injuries or infection that could not have occurred on February 8, 2002, but instead occurred several days before.

87.     Because Randy was not alone with Steven at any point in the days prior to February 8, 2002, he could not have caused injuries that led to Steven's death.

88.     As a result, Randy's conviction was vacated, and the prosecution dismissed all charges against him.

## MR. LIEBICH'S INJURIES

89.     Mr. Liebich was finally freed, but significant damage was done.

90.     Because of the Defendants' misconduct, Mr. Liebich was taken away from, and missed out on, the lives of his family and his friends. Mr. Liebich was robbed of opportunities to gain an education, to engage in meaningful labor, to develop a career, to raise his daughter, and to pursue his interests and passions. Mr. Liebich watched his friends and family move forward with their lives while he remained wrongly imprisoned. And during his imprisonment, Mr. Liebich's mother died. Mr. Liebich had already lost his father as a teenager, and was unable to spend his mother's last days with her. Because of his incarceration he was even denied the opportunity to attend her funeral and mourn together with his remaining family. Mr. Liebich has

been deprived of all of the basic pleasures of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

91.     During his 16 years of wrongful imprisonment, Mr. Liebich was detained in harsh and dangerous conditions in prisons throughout Illinois. Those conditions were made more harsh and dangerous because Mr. Liebich had been branded a child murderer, a label that made him particularly hated and castigated by prison staff and other residents of the prisons in which he served his sentence.

92.     Mr. Liebich lived in constant emotional anguish, never knowing whether the truth would come out and whether he would ever be exonerated.

93.     In addition to the severe trauma of wrongful imprisonment and Mr. Liebich's loss of liberty, the Defendants' misconduct continues to cause Mr. Liebich, physical and psychological pain and suffering, humiliation, constant fear, nightmares, anxiety, depression, despair, and other physical and psychological effects. Mr. Liebich has also suffered profound and continuing reputational harm as a result of being labeled a child murderer.

### COUNT I – 42 U.S.C. § 1983
### (Fourteenth Amendment)

94.     Mr. Liebich incorporates each paragraph of this Complaint as if fully restated here.

95.     In the manner described more fully above, Defendants, while acting individually, jointly, and in conspiracy with one another and others, as well as under color of law and within the scope of their employment, deprived Mr. Liebich of his constitutional right to a fair trial.

96.     These Defendants fabricated and manufactured false evidence falsely implicating Mr. Liebich in the crime, obtained Mr. Liebich's conviction using that false evidence, and failed

to correct fabricated evidence that they knew to be false when it was used against Mr. Liebich during his criminal case.

97.     The Defendants also withheld and suppressed evidence that would have demonstrated Mr. Liebich's innocence.

98.     These Defendants' misconduct directly resulted in the unjust and wrongful criminal prosecution and conviction of Mr. Liebich and the deprivation of Mr. Liebich's liberty, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment.

99.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Liebich's clear innocence.

100.    As a result of the Defendants' misconduct described in this Count, Mr. Liebich suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

## COUNT II – 42 U.S.C. § 1983
### (Fifth Amendment)

101.    Mr. Liebich incorporates each paragraph of this Complaint as if fully restated here.

102.    In the manner described more fully above, Defendants, acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, forced Mr. Liebich to incriminate himself falsely and against his will, in violation of his rights secured by the Fifth Amendment.

103.    The involuntary statements obtained by Defendants were used against Mr. Liebich to his detriment throughout his criminal case.

104.     Defendants' misconduct directly resulted in the unjust prosecution and conviction of Mr. Liebich and the deprivation of Mr. Liebich's liberty, thereby denying him his right against self-incrimination guaranteed by the U.S. Constitution.

105.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Liebich's clear innocence.

106.     As a result of the Defendants' misconduct described in this Count, Mr. Liebich suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

### COUNT III – 42 U.S.C. § 1983
### Deprivation of Liberty and Detention Without Probable Cause
### (Fourth and Fourteenth Amendments)

107.     Mr. Liebich incorporates each paragraph of this Complaint as if fully restated here.

108.     In the manner described more fully above, the Defendants, acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Mr. Liebich of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Mr. Liebich without any probable cause for doing so and in spite of the fact that they knew Mr. Liebich was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments.

109.     In so doing, these Defendants caused Mr. Liebich to be deprived of his liberty without probable cause and subjected improperly to judicial proceedings for which there was no probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments. These judicial proceedings were instituted and continued maliciously, resulting in injury.

110.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Mr. Liebich's clear innocence.

111.     As a result of the Defendants' misconduct described in this Count, Mr. Liebich suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

### COUNT IV – 42 U.S.C. § 1983
### Failure to Intervene

112.     Mr. Liebich incorporates each paragraph of this Complaint as if fully restated here.

113.     In the manner described above, during the constitutional violations described herein, one or more of the Defendants stood by without intervening to prevent the violation of Mr. Liebich's constitutional rights, even though they had the opportunity to do so.

114.     As result of the Defendants' failure to intervene to prevent the violation of Mr. Liebich's constitutional rights, he suffered injuries, including but not limited to loss of liberty, physical harm, and emotional distress. The Defendants had ample, reasonable opportunities to prevent this harm but failed to do so.

115.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Liebich's clear innocence.

116.     As a result of the Defendants' misconduct described in this Count, Mr. Liebich suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

## COUNT V – 42 U.S.C. § 1983
## Conspiracy to Deprive Constitutional Rights

117.     Mr. Liebich incorporates each paragraph of this Complaint as if fully restated here.

118.     The Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Mr. Liebich for a crime he did not commit and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Complaint.

119.     In so doing, these co-conspirators conspired to accomplish an unlawful purpose by unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Mr. Liebich of these rights.

120.     In furtherance of this conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

121.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Mr. Liebich's clear innocence.

122.     As a result of the Defendants' misconduct described in this Count, Mr. Liebich suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

## COUNT VI – State Law Claim
## Malicious Prosecution

123.     Mr. Liebich incorporates each paragraph of this Complaint as if fully restated here.

124.     In the manner described above, the Defendants, individually, jointly, or in conspiracy with one another, as well as within the scope of their employment, accused Mr. Liebich of murder, and exerted influence to initiate, continue and perpetuate judicial proceedings against Mr. Liebich for that crime, without any probable cause for doing so and in spite of the fact that they knew Mr. Liebich was innocent.

125.     In so doing, these Defendants caused Mr. Liebich to be subjected improperly to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

126.     The judicial proceedings against Mr. Liebich were terminated in his favor when the prosecution dismissed all charges against him after his conviction was vacated.

127.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth and Mr. Liebich's clear innocence.

128.     As a result of the Defendants' misconduct described in this Count, Mr. Liebich suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT VII – State Law Claim**
**Intentional Infliction of Emotional Distress**

129.     Mr. Liebich incorporates each paragraph of this Complaint as if fully restated here.

130.     The actions, omissions, and conduct of the Defendants, as set forth above, were extreme and outrageous.

131.    These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Mr. Liebich, as is more fully alleged above.

132.    As a result of the Defendants' misconduct described in this Count, Mr. Liebich suffered and continues to suffer emotional distress and other grievous and continuing injuries and damages set forth above.

<b>COUNT VIII – State Law Claim<br>Willful and Wanton Conduct</b>

133.    Mr. Liebich incorporates each paragraph of this Complaint as if fully restated here.

134.    At all times relevant to this complaint the Defendants had a duty to refrain from willful and wanton conduct in connection with the investigation into the death of Steven Quinn Jr.

135.    Notwithstanding this duty, the Defendants acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, Mr. Liebich's rights.

136.    As a result of the Defendants' misconduct described in this Count, Mr. Liebich suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

<b>COUNT IX – State Law Claim<br>Civil Conspiracy</b>

137.    Mr. Liebich incorporates each paragraph of this Complaint as if fully restated here.

138.    As described more fully in the preceding paragraphs, the Defendants, acting in concert with other known and unknown co-conspirators, reached an agreement among themselves to frame Mr. Liebich for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Mr. Liebich of these rights.

139.    The violations of Illinois law described in this complaint, including the Defendants' malicious prosecution of Mr. Liebich and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

140.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Mr. Liebich's clear innocence.

141.    As a result of the Defendants' misconduct described in this Count, Mr. Liebich suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages set forth above.

## COUNT X – State Law Claim
### *Respondeat Superior*

142.    Mr. Liebich incorporates each paragraph of this Complaint as if fully restated here.

143.    In committing the acts alleged in the preceding paragraphs, Defendants Joseph DelGiudice, Gregory Figiel, Edward Kunz, Thomas Szalinski, Boris Vrbos, Ray Bradford were employees of the County of DuPage and either the DuPage County Sheriff's Office or the DuPage County Children's Center, acting at all relevant times within the scope of their employment and under color of law.

144. Defendant County of DuPage is liable as principal for all torts committed by its agents.

145. In committing the acts alleged in the preceding paragraphs, Defendant Robert Liebich was an employee of the Village of Roselle and the Roselle Police Department, acting at all relevant times within the scope of his employment.

146. Defendant Village of Roselle is liable as principal for all torts committed by its agents.

## COUNT XI – State Law Claim
### Indemnification

147. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

148. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

149. Defendants Joseph DelGiudice, Gregory Figiel, Edward Kunz, Thomas Szalinski, Boris Vrbos, and Ray Bradford are or were employees of the DuPage County Sherriff's Office or Children's Advocacy Center, agencies of the County of DuPage, who acted within the scope of their employment in committing the misconduct described above.

150. The County is liable to indemnify any compensatory judgment awarded against the County of DuPage Defendants.

151. Defendant Robert Liebich is or was an employee of the Roselle Police Department, an agency of the Village of Roselle, who acted within the scope of his employment in committing the misconduct described above.

152. The Village of Roselle is liable to indemnify any compensatory judgment awarded against Robert Liebich.

WHEREFORE, Plaintiff RANDY LIEBICH, respectfully requests that this Court enter a judgment in his favor and against Defendants Joseph DelGiudice, Gregory Figiel, Edward Kunz, Thomas Szalinski, Boris Vrbos, Ray Bradford, Robert Liebich, Paul Severin, Lorenzo Muñoz, the County of DuPage, and Village of Roselle, awarding compensatory damages, attorneys' fees and costs against each Defendant, and, because they acted willfully, wantonly, and/or maliciously, punitive damages against each of the individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, RANDY LIEBICH, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

**RANDY LIEBICH**

BY: /s/ Tara Thompson
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Tara Thompson
Megan Pierce
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
T: (312) 243-5900
F: (312) 243-5902
tara@loevy.com