UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDY LIEBICH, | ) |
| Plaintiff, | ) ) ) Case No. 20-cv-2368 |
| v. | ) ) Hon. Steven C. Seeger |
| JOSEPH DELGIUDICE, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

In 2002, Plaintiff Randy Liebich was convicted of murdering two-year-old Steven Quinn Jr., and sentenced to sixty-five years in prison. The prosecution argued that Liebich used physical force against the child, causing a fatal brain injury. The state proved its case based in part on expert medical testimony. All along, Liebich maintained his innocence.

Then, nearly 16 years later, a state court vacated his conviction. A team of lawyers and medical experts presented evidence that undermined the state's theory of what caused the brain injury. According to them, an abdominal injury or condition – not an acute head injury – caused the brain swelling that led to the child's death. The state elected not to retry the case.

Now, Liebich is suing a number of people involved in the original investigation. He brought claims against the officers and investigators who worked on his case, the doctors who allegedly cooperated and conspired with them, and the municipal corporations who employed them. He seeks compensation for wrongful imprisonment and for his emotional and physical injuries. *Id*. at ¶¶ 94–116.

Liebich claims that Defendants violated his federal constitutional rights. He also brings state-law claims of malicious prosecution, intentional infliction of emotional distress, willful and

wanton conduct, and civil conspiracy. *Id.* at ¶¶ 117–41. He seeks to hold municipal entities liable, too, through theories of *respondeat superior* and indemnification. *Id*. at ¶¶ 142–52.

Currently before the Court are two motions to dismiss – one filed by DuPage County and the other filed jointly by two physician-defendants. *See* Dckt. Nos. 20, 37. The Court grants in part and denies in part the County's motion to dismiss. The Court denies the physician-defendants' motion to dismiss.

## Background

On February 8, 2002, Plaintiff Randy Liebich spent the day babysitting his girlfriend's two-year-old son, Steven. *See* Cplt., at ¶¶ 29–30 (Dckt. No. 1). It was an eventful month for Liebich and his young family. His girlfriend Kenyatta Brown, Steven's mother, had just given birth to their daughter, Angelique, and the four of them had just moved into a new apartment in DuPage County. *Id*. at ¶ 25.

After Brown returned home that afternoon, Liebich and Brown noticed that Steven was non-responsive, and they became concerned. *Id.* at ¶ 30. They took the child to the emergency room at Mount Sinai Hospital, where doctors discovered a problem with his brain. *Id*. at ¶¶ 31–32. The toddler was then transferred to Rush University Medical Center to receive more neurological care. *Id*. at ¶ 32. He eventually underwent neurosurgery to try to relieve the pressure in his skull. *Id.* at ¶ 33.

Right from the get-go, investigators suspected foul play and zeroed in on Liebech as the primary suspect. In fact, the same night that Liebich and Brown rushed the child to the hospital, investigators questioned Liebich for 17 hours. *Id*. at ¶¶ 44–47. During those 17 hours, Liebich alleges that they denied him access to a lawyer, denied him his medication, refused to allow his family to see him, and verbally and physically threatened him. *Id*. at ¶¶ 44–63.

Two-year-old Steven Quinn Jr. died on February 11, 2002, from complications related to his condition. *Id*. at ¶ 34. Two days later, DuPage County officers interrogated Liebich again, continuing to pursue a theory that physical force caused a traumatic brain injury that led to the child's death. *Id*. at ¶¶ 67–70.

Two doctors – Dr. Paul Severin and Dr. Lorenzo Munoz from Rush University Medical Center – provided medical opinions that the child had suffered an acute head trauma. *Id*. at ¶ 41. Liebich now claims that Severin and Munoz were in cahoots with the investigators, by "agree[ing] to provide false reports and opinions to point the finger" at him. *Id*. at ¶ 41; *see also id.* at ¶ 39 (alleging that "Defendants agreed to fabricate medical evidence to implicate him"). Throughout the investigation, Liebich consistently maintained that he did not hurt the child. *Id*. at ¶¶ 64, 70.

The complaint is thin on details about what happened after the child passed away. It does not mention anything about Liebich's trial (the headings in the complaint jump from an alleged interrogation on February 14, 2002, to Liebich's exoneration in 2018). And it does not reveal how the efforts to overturn his conviction got going. But the complaint does allege that Liebich was convicted of murder, and that the conviction was vacated in 2018. *Id*. at ¶ 88.

Apparently medical experts reviewed the records and opined that an acute brain injury did not cause the brain swelling at all. Instead, the brain condition was secondary to an abdominal injury or infection that would have occurred days before February 8, 2002. *Id*. at ¶ 86. Again, the complaint does not provide much detail about who offered that medical testimony. It simply mentions "multiple expert witnesses" who testified in "post-conviction proceedings." *Id.* But the main point is crystal clear – the child did not suffer a brain injury from a traumatic blow to the head.

3

The new medical evidence led to Liebich's freedom. After 16 years in prison, Liebich was released on bond. The prosecution dropped the case and dismissed all charges. *Id*. at ¶ 88.

Liebich later filed this lawsuit against a collection of individuals who played a role in the initial investigation, including officers in the DuPage County Sheriff's Office, an officer in the Roselle Police Department, and investigators at the DuPage County Children's Advocacy Center. *See id.* at ¶¶ 15–17. He also sued the two physicians, Dr. Paul Severin and Dr. Lorenzo Munoz, who allegedly conspired with the officers and investigators to falsify medical evidence to incriminate him. *Id*. at ¶ 19. Finally, he brought claims against DuPage County and the Village of Roselle, the Illinois municipal corporations that employed some of the individual Defendants. *Id.* at ¶¶ 20–21.

## Analysis

Now before the Court are two motions to dismiss – one by Defendant DuPage County and the other filed jointly by the two physician-defendants. *See* Dckt. Nos. 20, 37.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

I.      **DuPage County's Motion to Dismiss**

Defendant DuPage County's motion to dismiss is not a heavy lift because the parties agree on the proper result. The parties agree that DuPage County cannot be held liable on a theory of *respondeat superior* (Plaintiff's Count X) because "neither the DuPage County Sheriff's Office nor the Children's Center are employees or agents of DuPage County." *See* Cty.'s Mtn. to Dismiss, at 2–3 (Dckt. No. 20) (citing *Moy v. Cty. of Cook*, 159 Ill. 2d 519, 640 N.E.2d 926 (1994)); Pl.'s Resp. to Mtn. to Dismiss, at 3 (Dckt No. 30) ("Plaintiff does not seek to maintain a claim against Defendant County of DuPage on a *respondeat superior* theory of liability."). The County concedes that it is a proper party for indemnification purposes, and Liebich agrees. *See* Cty.'s Mtn. to Dismiss, at 2 (Dckt. No. 20); Pl.'s Resp. to Mtn. to Dismiss, at 3 (Dckt No. 30) (citing *Askew v. Sheriff of Cook Cty.*, 568 F.3d 632, 636 (7th Cir. 2009) (supporting the notion that the County is a proper indemnification defendant)).

That agreement also takes care of the County's request to dismiss any demand for punitive damages against the County. *See* Cty.'s Mtn. to Dismiss, at 4 (Dckt. No. 20). The County argues that it is immune from such damages. *Id.* (citing *City of Newport v. Fact Concepts*, 453 U.S. 247 (1981)). But Liebich has confirmed that he is seeking to hold the County liable for indemnification purposes only. So the County will not be held directly liable for punitive damages.

The motion to dismiss Count X, for *respondeat superior* liability, is granted. The motion to dismiss Count XI, for indemnification, is denied. The Court does not understand the County to have been named as a defendant on any other counts.[1]

---

[1] The Court notes that Liebich has not brought a *Monell* claim against the County. Liebich stated that he may seek to amend his complaint to add such a theory if warranted by the evidence. *See* Pl.'s Resp. to Mtn. to Dismiss, at 3 n.1 (Dckt No. 30).

5

## II. The Physicians' Motion to Dismiss

Unlike the other motion, there is substantive disagreement about Dr. Severin's and Dr. Munoz's joint motion to dismiss.

The doctors make three arguments in support of dismissal. First, they argue that they are absolutely immune from liability because their conduct was related to their testimony in Liebich's criminal trial. Second, they argue that Liebich's complaint lacks the factual detail necessary to state a claim for conspiracy. Third, they suggest that Liebich has failed to sufficiently allege that the doctors' conduct counts as state action for purposes of § 1983 liability.

"To succeed on [a] § 1983 claim, [a] plaintiff[] must prove (1) the deprivation of a right secured by the Constitution or federal law and (2) that defendants were acting under color of state law." *See Wilson v. Warren Cty.*, 830 F.3d 464, 468 (7th Cir. 2016). "For a private actor to act under color of state law he must have had a 'meeting of the minds' and thus reached an understanding with a state actor to deny plaintiffs a constitutional right." *Id*. (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 155 (1970) (internal quotation marks omitted)); *see also Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000) (requiring a showing of "a concerted effort between" a private actor and state actor and that the state actor and private actor "reached an understanding to deprive the plaintiff of her constitutional rights"); *Cunningham v. Southlake Ctr. for Mental Health, Inc*., 924 F.2d 106, 107 (7th Cir. 1991) ("A requirement of the joint action charge . . . is that both public and private actors share a common, unconstitutional goal."). "This is necessarily a factbound inquiry," requiring the Court to sift facts and weigh the circumstances to determine if private conduct is fairly attributable to the state. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1003 (7th Cir. 2003).

Dr. Severin and Dr. Munoz first argue that they cannot be held liable because they acted as witnesses for the government, and witnesses are entitled to absolute immunity from civil damages. *See* Joint Mtn. to Dismiss, at 4–5 (Dckt. No. 37) (citing *Brisco v. LaHue*, 460 U.S. 325 (1983)). Liebich does not take issue with that principle. *See* Pl.'s Resp. to Joint Mtn. to Dismiss, at 6 (Dckt. No. 56). Instead, Liebich argues that his allegations relate not to their testimony, but to the investigatory work that led the state to charge Liebich in the first place. *Id.* ("Plaintiff's claims arise out of the actions Defendant Cooperating Experts took to manufacture false evidence and provide false opinions and reports to frame Plaintiff."). In other words, witness immunity should not apply because the claim is not about their trial testimony.

The Court agrees that the complaint does not claim that the physicians violated his rights on the witness stand. Their testimony, in and of itself, did not give rise to the claim. The claim is about the investigation, not the trial testimony.

Liebich alleges that "Defendants agreed to fabricate medical evidence to implicate him," and that "Defendants Severin and Munoz provided reports and opinions that Steven suffered from a traumatic brain injury caused by physical force, and that his injury occurred on February 8, 2002." *See* Cplt., at ¶¶ 40–41 (Dckt. No. 1). Those allegations relate to the initial investigation into Steven's death, not their role as witnesses at trial.

The Supreme Court has recognized the importance of distinguishing between working on an investigation (on the one hand) and preparing for trial testimony (on the other). Investigations often lead to trial testimony. If immunity extended to anything that culminated in trial testimony, immunity would sweep so broadly that it would run the risk of immunizing all investigatory conduct. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 276 (1996) ("A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after

7

a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as 'preparation' for a possible trial[.]"). The same logic applies to government witnesses. *See Stinson v. Gauger*, 868 F.3d 516, 518 (7th Cir. 2015) (rejecting immunity where "claims focus[ed] on [defendants'] conduct while the murder was being investigated, not on their trial testimony or trial testimony preparation").

Defendants attempt to distinguish *Stinson* by arguing that the witnesses in that case were hired by the government. *See* Joint Reply Brf., at 2–3 (Dckt. No. 57). But that argument goes to whether the witnesses were state actors, not whether they enjoyed witness immunity. Nothing in *Stinson* suggests that witnesses *not* hired by the government receive enlarged immunity for their role in the investigative process. Accordingly, Dr. Severin and Dr. Munoz cannot rely on witness immunity as a shield against Liebich's claims.

Defendants next argue that Liebich has failed to include enough factual detail in his complaint to state a claim for conspiracy. In making this argument, Defendants rely on "heightened pleading requirements" for conspiracy claims and the Seventh Circuit's decision in *Cooney v. Rossiter*, 583 F.3d 976 (7th Cir. 2009). *See* Joint Reply Brf., at 3–6 (Dckt. No. 57).

"There is no heightened pleading standard for conspiracy claims[.]" *See Sanchez v. Village of Wheeling*, 447 F. Supp. 3d 693, 705 (N.D. Ill. 2020); *Gibson v. City of Chicago*, 2020 WL 4349855, at *12 (N.D. Ill. 2020) (same). Instead, in order to adequately allege a conspiracy under section 1983, a plaintiff must allege "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so

8

that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002).

Liebich's complaint satisfies that standard. He alleges that Dr. Severin and Dr. Munoz, together with the DuPage police, agreed to falsify "reports and opinions to point the finger at Mr. Liebich" during the initial investigation in early February 2002. *See* Cplt., at ¶¶ 39–42 (Dckt. No. 1). Those allegations are enough to put Defendants on notice of Liebich's claims within the meaning of the Seventh Circuit's holding in *Walker*.

*Cooney* does not imply a contrary result. There, the Seventh Circuit took issue with a "bare allegation of conspiracy," holding that it was insufficient to "survive a motion to dismiss." *See Cooney*, 583 F.3d at 970. But the Seventh Circuit in *Cooney* explicitly endorsed *Walker* and applied the familiar pleading standard described by the Supreme Court in *Twombly* and *Iqbal*. *Id*. Unsurprisingly given that standard, the Seventh Circuit held that a complaint is subject to dismissal when "[n]o factual allegations tie the defendants to a conspiracy with a state actor." *Id*. at 971. As described above, Liebich's complaint includes factual allegations beyond the mere assertion that a conspiracy existed, and *Cooney* therefore does not support dismissal here.

The doctors' final argument is that Liebich's complaint fails to allege that their activities constituted state action within the meaning of section 1983 and fails to sufficiently allege state-law claims for malicious prosecution, intentional infliction of emotional distress, willful and wanton conduct, and civil law conspiracy. *See* Joint Reply Brf., at 7 (Dckt. No. 57). Defendants' arguments rely on the theory that the "allegations of conspiracy are legally insufficient." *Id*.; *see also id.* at 8 (arguing that "if the conspiracy theory counts are dismissed as required by law, the remaining counts all fall because of their direct reliance upon the allegation of a conspiracy"). But the Court has concluded that the conspiracy claim passes muster.

9

Plus, to the extent that Defendants advanced an independent argument suggesting that Dr. Severin and Dr. Munoz were not acting under color of state law, that argument also fails. A conspiracy with the government is enough to render a private citizen a state actor. *See Morfin*, 349 F.3d at 1003 (explaining that a private citizen can be a state actor "because he has acted together with . . . state officials") (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). And besides, the inquiry into whether a private citizen has acted under color of state law for section 1983 purposes is "necessarily factbound." *Id*. Here, that inquiry would mean parsing the relationship between the doctors and the officers, and exploring what they agreed to, and when. The factual nature of that inquiry makes it an inappropriate ground for dismissal.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part DuPage County's motion to dismiss. The Court denies Dr. Severin's and Dr. Munoz's joint motion to dismiss.

Date:   March 22, 2021

Steven C. Seeger
United States District Judge