**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RANDY LIEBICH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-2368 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| JOSEPH DELGUIDICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION AND ORDER

In 2002, Randy Liebich was convicted of murdering a two-year-old boy. The state had charged Liebich with abusing the child while his mother was at work, causing a fatal brain injury. He received a sentence of 65 years in prison.

In 2018, nearly 16 years later, a state court vacated the conviction. New medical experts testified about the cause of death. They concluded that the child had a preexisting abdominal injury or condition, and that condition – not physical trauma on the day of the hospitalization – caused the fatal brain injury. After the court vacated his conviction, the state elected not to pursue charges a second time.

Liebich filed suit less than two years later. He sued the individual police officers and investigators who worked on his case, and the municipalities who employed them. He also sued the doctors who allegedly conspired with the officers to misdiagnose the child's condition. Liebich brought 11 causes of action, including federal and state claims. The municipalities and the doctors filed motions to dismiss, which this Court previously granted in part and denied in part.

Liebich later filed an amended complaint. He alleged the same causes of action, and he added a negligence claim against the individual doctors. He also added a new defendant, Rush University Medical Center.

Since then, most of the parties have settled with Liebich. But the two doctors remain in the case, and so does Rush. The physicians and Rush later filed separate motions to dismiss.

For the reasons stated below, the motions are granted in part and denied in part.

**Background**

When deciding a motion to dismiss, the Court takes as true all well-pleaded facts alleged in the complaint and draws reasonable inferences in the plaintiff's favor. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003); *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

The Court summarized the allegations of the original complaint in its prior Opinion. *See* 3/22/21 Mem. Opin. and Order, at 2–4 (Dckt. No. 115). The Court provides an abbreviated account here.

In early 2002, Randy Liebich lived with his girlfriend, Kenyatta Brown. *See* Am. Cplt., at ¶ 24 (Dckt. No. 131). Brown had recently given birth to the couple's daughter. *Id.* Brown also had a two-year-old son from a prior relationship, named Steven. *Id.* at ¶ 25. Liebich, Brown, and the children lived together as a family in February 2002. *Id.* at ¶ 28.

On the morning of February 8, 2002, Brown left for work, and Liebich stayed with the two children. *Id.* at ¶ 32. When Brown came home, she noticed that Steven wouldn't respond,

so the couple rushed him to the emergency room. *Id.* at ¶¶ 32–33. Hospital staff then transferred the child to Rush University Medical Center for specialized care. *Id.* at ¶ 34.

Since Liebich was at home with the boy when he became unresponsive, police suspected foul play. *Id.* at ¶ 40. Officers from DuPage County interrogated Liebich later that night. *Id* at ¶ 47. Liebich denied any involvement in causing his condition. *Id.* at ¶ 67

While medical staff at Rush treated the child, two doctors – Defendants Dr. Paul Severin and Dr. Lorenzo Munoz – provided reports that the boy had suffered a traumatic brain injury caused by physical force. *Id.* at ¶ 44. Most importantly, the physicians concluded that the injury had occurred that day, meaning the day of his hospitalization. *Id.* Based on those reports, the police became more suspicious about Liebich. *Id.* at ¶ 142.

On February 11, 2002, Rush medical staff determined that the child was brain dead, and tragically, he soon passed away. *Id.* at ¶ 36. Two days later, on February 13, DuPage police officers went to Liebich's home and interrogated him a second time. *Id.* at ¶¶ 70–73. The next day, an officer with the Roselle Police Department questioned Liebich as well. *Id.* at ¶¶ 76–77. During both interrogations, Liebich denied any responsibility for the boy's injuries or death. *Id.* at ¶¶ 73, 81.

Like the original complaint, the amended complaint provides few details about what happened after the child's death. But the Court understands that Liebich was ultimately detained, tried, and convicted of murder. *Id.* at ¶ 69. A state court sentenced him to 65 years of imprisonment. *Id.* at ¶ 6.

In 2018, Liebich's conviction was vacated, and the prosecution moved to dismiss the charges. *Id.* at ¶ 91. The amended complaint does not explain the story behind Liebich's efforts to overturn his conviction. But apparently, independent medical experts challenged the reports

prepared by Dr. Severin and Dr. Munoz.  The experts concluded that physical force on the day of hospitalization (February 8) did not cause the child's brain injury.  *See id.* at ¶¶ 45, 89.  Instead, the boy died because of abdominal injuries or an infection that occurred days before February 8, 2002.  *Id.* at ¶¶ 38, 45, 89.

Liebich spent 16 years in prison before his conviction was vacated.  In April 2020, he filed this suit.  *See* Cplt. (Dckt. No. 1).  He brought 11 counts against a number of defendants: DuPage police officers, the County of DuPage, investigators in the DuPage County Children's Advocacy Center, a Roselle police officer, the Village of Roselle, Dr. Severin, and Dr. Munoz. *Id.* at ¶¶ 14–21.  Liebich maintained, among other allegations, that the two doctors conspired with the officers and investigators to falsify medical evidence and thus incriminate him in February 2002.  *Id.* at ¶ 40.

The County of DuPage and the individual doctors moved to dismiss.  *See* Def. County of DuPage's Mtn. to Dismiss (Dckt. No. 20); Defs. Munoz and Severin's Mtn. to Dismiss (Dckt. No. 37).  This Court granted in part and denied in part the County's motion to dismiss, and the Court denied the physician-defendants' motion to dismiss.  *See* 3/22/21 Mem. Opin. and Order, at 10 (Dckt. No. 115).

In response to this Court's rulings, Liebich filed an amended complaint in April 2021. *See* Am. Cplt. (Dckt. No. 131).  He added a new defendant, Rush University Medical Center, and a new claim of negligence against the individual doctors.  Otherwise, the amended complaint follows the original complaint.

The physician-defendants moved to dismiss again.  *See* Defs. Munoz and Severin's Mtn. to Dismiss Am. Cplt. (Dckt. No. 164).  Defendant Rush University Medical Center also moved to dismiss the amended complaint.  *See* Def. Rush's Mtn. to Dismiss Am. Cplt. (Dckt. No. 170).

4

In the meantime, the remaining defendants dropped out of the case. Liebich settled with the Village of Roselle and a Roselle police officer, so the Court dismissed them from the case. *See* 6/1/21 Order (Dckt. No. 154). Liebich then settled with the individual DuPage defendants and the County of DuPage, so the Court dismissed them too. *See* 3/3/22 Order (Dckt. No. 245); 3/14/22 Order (Dckt. No. 249).

As things stand, the case involves 10 claims against the two physicians and Rush. The amended complaint does not specify which counts are against which defendants, so the Court interprets the complaint broadly to bring all claims against all remaining defendants (except Count XI).

Some of the claims are constitutional claims. Count I is Fourteenth Amendment claim about an unfair trial. (Liebich dropped Count II.) Count III is a wrongful detention claim under the Fourth Amendment and the Fourteenth Amendment. Count IV is a failure to intervene claim. Count V is a conspiracy claim about depriving Liebich of his constitutional rights.

The other claims arise under state law. The claims include malicious prosecution (Count VI), intentional infliction of emotional distress (Count VII), willful and wanton conduct (Count VIII), negligence (Count IX), and civil conspiracy (Count X). Finally, Count XI is a *respondeat superior* claim against Rush.

### Legal Standards

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, the complaint must

give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Documents attached to a complaint "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (cleaned up).

## Analysis

There are two motions to dismiss: one by the two physicians, and the other by Rush. The Court will consider them one at a time.

## I. Individual Physician Defendants

From a pleading standpoint, this motion to dismiss is the second lap around the track. Liebich filed the original complaint, Defendants moved to dismiss, and this Court ruled. Then, Liebich filed an amended complaint, and Defendants moved to dismiss a second time. But this time, Defendants made a few arguments that they didn't make on the first go-around.

Liebich responds that Defendants are stuck with what they argued before, and can't advance new arguments. Not so. A plaintiff can file a new complaint, and a defendant can file a new motion to dismiss. That new motion to dismiss can include new arguments. A new complaint is a new target.

Liebich relies on Rule 12(g)(2), which addresses filing multiple motions. "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but

6

omitted from its earlier motion." *See* Fed. R. Civ. P. 12(g)(2). But Rule 12(g)(2) is about *successive* motions, meaning the practice of filing more than one motion at one complaint. Each complaint is its own target, and a defendant gets one shot at that target.

That's not the situation here. Defendants did not file more than one motion to dismiss. Each group of defendants filed one motion to dismiss the original complaint, and one motion to dismiss the amended complaint. That's fine. The arguments don't need to be the same. Each complaint is its own canvas, and so is each motion to dismiss.

"Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion." *See Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012); *see also Shebley v. United Cont'l Holdings, Inc.*, 2020 WL 2836796, at *4 (N.D. Ill. 2020) ("The Seventh Circuit has read Rules 12(g) and 12(h) to allow a defendant who moved to dismiss a complaint for failure to state a claim to make a new argument in a motion to dismiss an amended complaint for failure to state a claim, even if that new argument was available when the defendant filed its previous motion to dismiss.").

The Court considers the new content along with the old, in that order.

### A. Federal Claims

The physician defendants argue that Liebich's section 1983 claims (Counts I, III, IV, and V) are barred by the statute of limitations. Defendants argue that Liebich's claims accrued when he was indicted in 2002. *See* Defs. Munoz and Severin's Mtn. to Dismiss Am. Cplt., at 11–14 (Dckt. No. 164); Pl.'s Resp., at 11–14 (Dckt. No. 188). So, according to the physician defendants, Liebich had until early 2004 to file suit for any claim under section 1983. But he waited until 2020. In their view, Liebich is 16 years late.

A statute of limitations is an affirmative defense, and "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). But "the statute of limitations may be raised in a motion to dismiss 'if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)).

The running of the statute of limitations in a claim under section 1983 turns on both state and federal law. State law determines how much time is on the clock, and federal law determines when the clock starts to tick. *See McMurtry v. Wexford Health Sources, Inc.*, 2021 WL 1165102, at *6 (N.D. Ill. 2021).

The statute of limitations for a claim under section 1983 depends on the statute of limitations for a personal injury action in the state where the injury occurred. *See Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). Illinois has a two-year statute of limitations for personal injury claims, measured from the time when the claim accrued. *See, e.g.*, *Woods v. Illinois Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 766 (7th Cir. 2013). So, Liebich had two years to file suit – that is, two years were on the clock.

Federal law determines when the clock starts to run, that is, when the claim accrues. "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original); *see also Smith v. City of Chicago*, 3 F.4th 332, 335 (7th Cir. 2021) ("Although state law determines the length of the statute of limitations for a section 1983 claim, federal law provides when that limitations period begins."). The accrual date is "governed by federal rules conforming in general to common-law tort principles." *See Wallace*, 549 U.S. at 388. Under those common-

law tort principles, "claims accrue when a plaintiff has a complete and present cause of action." *See Savory v. Cannon*, 947 F.3d 409, 414 (7th Cir. 2020).

The first step is pinning down the claims. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017) ("[T]he threshold inquiry in a § 1983 suit . . . requires courts to 'identify the specific constitutional right' at issue.") (citation omitted). Liebich invokes the right to a fair trial under the Fourteenth Amendment, and the right against wrongful pretrial detention under the Fourth Amendment. *See* Am. Cplt., at ¶¶ 97–103, 110–114 (Dckt. No. 131).

As an aside, Liebich also invokes the Fourteenth Amendment (in addition to the Fourth Amendment) in his wrongful pretrial detention claim (Count III). *Id.* at ¶ 112 (asserting his "rights secured by the Fourth and Fourteenth Amendments"). But that's the wrong amendment. The Fourth Amendment, not the Fourteenth Amendment, governs claims of wrongful pretrial detention. *See, e.g.*, *Young v. City of Chicago*, 987 F.3d 641, 645 (7th Cir. 2021) ("[T]he Fourth Amendment, not the Due Process Clause, governs a claim for wrongful pretrial detention.") (citation omitted); *Lewis v. City of Chicago*, 914 F.3d 472, 478 (7th Cir. 2019) ("It's now clear that a § 1983 claim for unlawful pretrial detention rests *exclusively* on the Fourth Amendment.").

Liebich was indicted in 2002, but that doesn't mean that his claim accrued in 2002. The claim couldn't accrue when he *couldn't* bring a claim. The claim accrued when he could sue, and not before.

A plaintiff suing under section 1983 cannot "obtain damages for challenges to conviction or imprisonment, or any actions that would necessarily invalidate a conviction, until the conviction [is] set aside." *Smith*, 3 F.4th at 337 (citing *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)). In other words, a plaintiff cannot bring a section 1983 claim for wrongful conviction when a ruling in his favor "would render [the] conviction or sentence invalid." *See Heck*, 512

U.S. at 486. The plaintiff must wait until his conviction has been "invalidated in some way" before bringing claims that would undermine the conviction. *See McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019).

Liebich's wrongful conviction claim under the Fourteenth Amendment (Count I) rests on his allegation that Defendants fabricated evidence against him. His claim, if successful, would have pulled the rug out from under the criminal case. So Liebich's claim accrued – at the earliest – when the state court vacated his conviction. *See Heck*, 512 U.S. at 486; *Moore v. City of Chicago*, 2020 WL 3077565, at *3 (N.D. Ill. 2020) ("Plaintiff's sentence was vacated and his charges were dismissed. That is all he needs to allege for his section 1983 claims to satisfy *Heck*.").

The state court vacated Liebich's conviction on September 14, 2018, and the state dropped charges against him on April 17, 2019. *See* Post-Conviction Order (Dckt. No. 188-1); *Nolle Prosequi* Order (Dckt. No. 188-2).[1] Liebich brought his original complaint on April 16, 2020. *See* Cplt. (Dckt. No. 1). About a year and a half passed between the vacatur of his conviction in September 2018 and the filing of this lawsuit in April 2019.

It wouldn't matter if his claim accrued *later* – that is, if it accrued when the state dropped the charges in April 2019.[2] If the clock hypothetically started at that point, Liebich would have

---

[1] Under Federal Rule of Evidence 201(b), this Court can take judicial notice of an adjudicative fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201; *see also United States v. Payne*, 964 F.3d 652, 656 (7th Cir. 2020) (noting that a court may take notice of "court records as evidence of prior judicial actions").

[2] The Court assumes without deciding that an unlawful pretrial detention claim that challenges the evidence in an ongoing criminal case does not accrue until the case ends in the detainee's favor. A criminal defendant can't bring a civil suit under section 1983 to challenge the evidence in a criminal case while the case is pending. So, Liebich's claim presumably did not accrue until the state dropped the charges, *after* his sentence was vacated. When his conviction was overturned, the case went back to the trial court, and the charges were then pending. At that point, Liebich stood in the same position as any other person who hopes to challenge the evidence in a criminal case before trial. Liebich needed to wait

10

had more time to sue, not less. Only a year passed from April 2019 to April 2020. Either way, the complaint was timely.

The same conclusion applies to the wrongful detention claim under the Fourth Amendment (Count III). "*Heck* provides the accrual date for an unreasonable detention claim based on the fabrication of evidence or other direct challenges to a conviction." *Gibson v. City of Chicago*, 2020 WL 4349855, at \*10 (N.D. Ill. 2020). Liebich's Fourth Amendment claim challenges his arrest and detention, alleging that the prosecution relied on fabricated evidence and a conspiracy to frame him. *See* Pl.'s Resp., at 4 (Dckt. No. 188); Am. Cplt., at ¶¶ 45, 111 (Dckt. No. 131).

Liebich's wrongful detention claim challenges the substance of the criminal charges. His claim would have undermined the criminal case and conviction, so the claim did not accrue until the court vacated his sentence (or more likely, when the state dropped the charges).[3] *See Sanders v. St. Joseph County*, 806 F. App'x 481, 484 (7th Cir. 2020) ("If, however, a conclusion that Sanders's confinement was unconstitutional would imply the invalidity of an ongoing criminal

---

until he won at trial, or the case was dropped, before bringing a civil claim to challenge the evidence. *See, e.g.*, *Sanders v. St. Joseph County*, 806 F. App'x 481, 484 (7th Cir. 2020). But this Court does not need to resolve that issue, because either way, Liebich's claim was timely.

[3] A pretrial detention claim accrues when the detention ends if the pretrial detention claim does not have anything to do with challenging the criminal case itself. *See Smith v. City of Chicago*, 3 F.4th 332, 339 (7th Cir. 2021) ("We hold that even when charges remain outstanding, a Fourth Amendment claim for unlawful pretrial detention accrues upon the plaintiff's release from detention, and not upon the favorable termination of the charges against the plaintiff."). Crucially, "the allegedly fabricated evidence in Smith's case was not used at his trial, and nothing in his complaint suggests that it was. So *Heck* would not require a court to bar Smith's claim if he had brought it immediately upon his release on bond." *Id.* at 339. But unlike the plaintiff in *Smith*, Liebich's claim cannot be "separated from his overall prosecution." *Id.* at 338–39. He is challenging the evidence used against him at the criminal trial. Two district court opinions have come to similar conclusions. *See Cusick v. Gualandri*, 2021 WL 5447041, at \*5 (N.D. Ill. 2021) ("*Smith* is easily distinguishable from the allegations in the present case. Count II 'attacks the whole prosecution'. Unlike in *Smith*, where Plaintiff alleged only that officers used fabricated evidence to place him in custody, Cusick alleges that Defendants fabricated evidence and presented false information to the grand jury to obtain an indictment and at his trial to convict him."); *Jackson v. City of Chicago*, 2021 WL 3883111, at \*3 (N.D. Ill. 2021) (distinguishing *Smith* because "Jackson's conviction is inextricably tied up in his Fourth Amendment claim").

11

proceeding or a prior criminal conviction, then *Heck* would continue to bar Sanders's claim after his release and until either those proceedings terminated in his favor or the conviction was vacated."); *Fulton v. Bartik*, 547 F. Supp. 3d 799, 815 (N.D. Ill. 2021) ("Here, a judgment for plaintiffs on the unlawful pretrial detention claim would have undermined the validity of their convictions because both their pretrial detention and convictions were based on the same allegedly fabricated evidence. Therefore, a judgment in plaintiffs' favor on the unlawful pretrial detention claims directly challenges – and thus necessarily threatens to impugn – the prosecution itself.") (cleaned up); *Culp v. Flores*, 454 F. Supp. 3d 764, 769 (N.D. Ill. 2020) ("Because, given the nature of his Fourth Amendment claim, a finding that Culp's detention in jail was unconstitutional would imply the invalidity of the charges brought against him, *Heck* barred that claim until those charges were dismissed.").

Liebich's remaining federal claims are timely as well. His failure-to-intervene claim (Count IV) and conspiracy claim (Count V) rely on his Fourteenth and Fourth Amendment injuries. *See, e.g.*, *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation.") (citation omitted); *Gordon v. Devine*, 2008 WL 4594354, at *5 (N.D. Ill. 2008) ("To determine the accrual date of a conspiracy claim under § 1983, we must examine the accrual dates of each of the constitutional violations that make up the alleged conspiracy.") (citing *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)). The underlying claims are timely, so the failure to intervene claim and the conspiracy claim are timely too.

Accordingly, the physician defendants' motion to dismiss Liebich's section 1983 claims (Count I, Count III, Count IV, and Count V) is denied. The wrongful pretrial detention claim

(Count III) is dismissed to the extent that it relies on the Fourteenth Amendment, but survives under the Fourth Amendment.

### B. State Law Claims – Malicious Prosecution, Intentional Infliction of Emotional Distress, and Civil Conspiracy

Liebich also brings a collection of state law claims. This section of the Opinion will address three of the claims: malicious prosecution, intentional infliction of emotional distress, and civil conspiracy. The physician defendants moved to dismiss each claim.

Defendants argue that Liebich failed to plead malicious prosecution because he cannot show a lack of probable cause. A malicious prosecution claim includes five elements: "(1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016).

Defendants contend that Liebich cannot plead the third element because a grand jury already determined that there was probable cause for his indictment. *See* Defs. Munoz and Severin's Mtn. to Dismiss Am. Cplt., at 18 (Dckt. No. 164) (citing Indictment (Dckt. No. 164-2)).

But the existence of an indictment does not preclude a claim of malicious prosecution. A grand jury indictment is evidence of probable cause, but it does not end the matter. Otherwise, the prosecution could present phony evidence to a grand jury, and a defendant could not file suit based on the presentation of fake evidence. *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 863 (7th Cir. 2010); *Engel v. Buchan*, 791 F. Supp. 2d 604, 611 (N.D. Ill. 2011) ("While a criminal indictment or conviction is prima facie evidence of probable cause, it may be rebutted by evidence that it was obtained fraudulently.").

And at the pleading stage, courts shy away from declaring a winner on one of the elements, unless the plaintiff pleads himself out of court. *See, e.g.*, *Cusick v. Gualandri*, 2021 WL 5447041, at *6 (N.D. Ill. 2021) ("At this pleading stage, the Court will not make a finding about the existence of probable cause."). Here, Liebich can bring a malicious prosecution claim, even though there was an indictment, so he hasn't pled himself out of the courthouse. The physician defendants' motion to dismiss Liebich's malicious prosecution claim is denied.

Next, Defendants challenge Liebich's claim of intentional infliction of emotional distress as untimely. They argue that the claim accrued two years after Dr. Severin and Dr. Munoz caused Liebich's emotional distress when they testified at the 2004 trial. In their view, the claim accrued in 2006.

Defendants once again fail to account for *Heck*. The claim did not accrue before his conviction was vacated in 2018 (if not later, when the prosecution dismissed the case). *See Fulton*, 547 F. Supp. 3d at 822 ("*Heck*'s bar on § 1983 damages claims applies to state law claims as well."); *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 801 (N.D. Ill. 2013) ("Illinois has adopted the *Heck* rule."). Here, Liebich's claim of intentional infliction of emotional distress would have undermined his conviction, so *Heck* barred his claim until (at least) the state court overturned his conviction. *See Fulton*, 547 F. Supp. 3d at 822 ("[T]he alleged course of conduct forming the basis of the IIED claims went from arrest through prosecution and was perfected in plaintiffs' convictions. If judgment were entered for plaintiffs on the IIED claims, that would have undermined the validity of their convictions."); *Hill v. Cook County*, 463 F. Supp. 3d 820, 844 (N.D. Ill. 2020) ("Hill could not have brought his claim for intentional infliction of emotional distress until his conviction was overturned. He claims that he suffered emotional distress from the false accusation and unjust incarceration, which is

14

inconsistent with a finding of guilt.").  The physician defendants' motion to dismiss Liebich's claim of intentional infliction of emotional distress is denied.

Finally, the physician defendants argue that Liebich's civil conspiracy claim fails because he has not plausibly alleged any underlying state law tort.  *See Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017) ("Under Illinois tort law, a civil conspiracy requires (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) *at least one tortious act* by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.") (emphasis added) (cleaned up).

But the complaint alleges claims of malicious prosecution, and intentional infliction of emotional distress, so it pleads an underlying tort.  The physician defendants' motion to dismiss the civil conspiracy claim is denied.

### C.     State Law Claims – Negligence, Willful and Wanton Conduct

Liebich also brings claims of negligence and willful and wanton conduct.  Once again, the physician defendants moved to dismiss.  But this time, Liebich's claims do not pass muster.

To state a claim for negligence, a plaintiff must allege "the defendant owed a duty of care, the defendant breached that duty, and the breach was a proximate cause of his or her injuries."  *See Monson v. City of Danville*, 2018 IL 122486, 425 Ill. Dec. 526, 115 N.E.3d 81, 95 (2018); *see also Pendolino v. BAC Home Loans Servicing, LP*, 2011 WL 3022265, at *4 (N.D. Ill. 2011).  "Whether a duty exists is a question of law to be determined by the court."  *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018); *see Zissu v. IH2 Prop. Illinois, L.P.*, 157 F. Supp. 3d 797, 800 (N.D. Ill. 2016) ("[A]lthough it can depend on the facts of a particular case, [the existence of a duty] can be addressed on a motion to dismiss.").

To determine if the defendant had a duty, a court considers "whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff." *Id.* (citing *Bucheleres v. Chicago Park Dist.*, 171 Ill. 2d 435, 216 Ill. Dec. 568, 665 N.E.2d 826, 831 (1996)). Courts generally weigh four factors: "(1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant." *Id.* (citing *Wilfong v. L.J. Dodd Constr.*, 401 Ill. App. 3d 1044, 341 Ill. Dec. 301, 930 N.E.2d 511, 519 (2010)).

Liebich argues that Dr. Severin and Dr. Munoz "had a duty to Mr. Liebich to refrain from providing police with medical information and opinions about Steven Quinn Jr.'s injuries, physical condition, and death" without relying on "the relevant standard of care" and "reasonable medical judgment." *See* Am. Cplt., at ¶ 141 (Dckt. No. 131). In his view, the physician defendants "violated the standard of care and failed to use reasonable medical judgment when they told police and provided medical records to police reflecting [] inaccurate medical conclusions" about the child's brain injury. *Id.* at ¶ 142.

Liebich offers no Illinois case law supporting the existence of his proposed duty, and the Court could not find any, either. Maybe the physicians owed a duty to the child, as the patient, even though he was deceased. (The parties did not discuss it, and the Court does not know.) Liebich is not arguing that the doctors owed him a duty in his capacity as a parent or guardian.

Liebich does not explain why the doctors owed him a duty at all. Maybe he is suggesting that doctors owe a duty to everyone to be careful. Or, maybe he is arguing that the doctors owed him a duty of care in his capacity as a criminal suspect. *See* Pl.'s Resp., at 20–21 (Dckt. No. 188).

16

This Court is not aware of any support for the notion that a physician owes a duty to a third party standing in Liebich's shoes. Liebich seemingly asks this Court to recognize a novel duty between a doctor and a *potential criminal suspect* based on the doctor's assessment of the *victim* and the doctor's decision to share his medical judgment with law enforcement. If there is any such authority out there, Liebich has not cited it. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel."); *Birch/Rea Partners, Inc. v. Regent Bank*, 2022 WL 611491, at *3 (7th Cir. March 2, 2022) ("Nor is it our job to do the legal research that a party fails to do . . . .") (cleaned up).

The Seventh Circuit has instructed district courts to tread lightly "[w]hen given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability, [a federal court] should choose the narrower and more reasonable path (at least until the Illinois Supreme Court [says] differently)." *See Great N. Ins. Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852, 856 (N.D. Ill. 2021) (alterations in original) (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994)); *see also Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000) ("Federal courts are loathe to fiddle around with state law. Though district courts may try to determine how the state courts would rule on an unclear area of state law, district courts are encouraged to dismiss actions based on novel state law claims."); *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000) ("When we are faced with two opposing and equally plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability.") (cleaned up); *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 n.5 (7th Cir. 2007) (noting that this principle applies "even where the plaintiff had

no choice but to litigate [its] claim in federal court"); *1409 W. Diversey Corp. v. JPMorgan Chase Bank, N.A.*, 2016 WL 4124293, at *1 (N.D. Ill. 2016) ("The Seventh Circuit has indicated that federal courts should be cautious in expanding the liability under state common law.").

The Seventh Circuit's admonition applies with particular force in this case, with Liebich arguing for an expansion of a physician's duty of care to *non-patient* third parties. Illinois courts have cautioned against finding a duty between doctors and third parties in the closely related context of medical malpractice claims. *See, e.g.*, *Tedrick v. Cmty. Res. Ctr., Inc.*, 235 Ill. 2d 155, 336 Ill. Dec. 210, 920 N.E.2d 220, 224 (2009) ("[T]he preferable view, and the one consistent with this court's holdings and with legislation based on social and public policy, is that a plaintiff cannot maintain a medical malpractice action absent a direct physician-patient relationship between the doctor and plaintiff or a special relationship.") (citing *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 117 Ill. 2d 507, 111 Ill. Dec. 944, 513 N.E.2d 387, 398 (1987)); *Murillo v. United States*, 504 F. Supp. 3d 875, 884 (N.D. Ill. 2020) ("In Illinois, a physician's duty arises only when a physician-patient relationship has been expressly established or when a special relationship exists, such as when one physician is asked by another physician to provide a service to a patient, conduct laboratory tests, or review test results.") (citing *Siwa v. Koch*, 388 Ill. App. 3d 444, 327 Ill. Dec. 787, 902 N.E.2d 1173, 1176 (2009), and *Weiss v. Rush N. Shore Med. Ctr.*, 372 Ill. App. 3d 186, 310 Ill. Dec. 231, 865 N.E.2d 555, 557 (2007)).

The same principles apply to Liebich's negligence claim. To hold that Dr. Severin and Dr. Munoz had a duty to Liebich – meaning a duty to not share erroneous medical judgments with law enforcement officers – would greatly increase the burden of liability on physicians. And it would cut against Illinois courts' admonition to limit a physician's duty of care to his or

her patients. Without any duty, Liebich cannot plead a negligence claim. The Court therefore grants the physician defendants' motion to dismiss Count IX.[4]

Finally, the physician defendants argue that "willful and wanton conduct" is not an independent cause of action. The Court agrees.

Illinois law does not recognize a "separate and independent tort of willful and wanton conduct." *See Falcon v. City of Chicago*, 2021 WL 1222869, at *5 (N.D. Ill. 2021) (citation omitted). That said, Illinois courts interpret willful and wanton conduct as "an aggravated form of negligence." *See Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388, 439 Ill. Dec. 595, 148 N.E.3d 648, 653 (2018). To state a claim for aggravated negligence, a plaintiff must plead and prove the basic elements of a negligence claim, as well as the additional element that the defendant had "either a deliberate intention to harm or a conscious disregard for the

---

[4] Liebich's negligence claim could be considered a malpractice claim. The complaint describes Count IX under the header of "negligence." But "[e]ven if a complaint does not state a medical malpractice claim on its face, it may nonetheless come within the ambit of the [Healing Art Malpractice Act] if it sounds in malpractice." *See Harris v. Wexford Health Sources, Inc.*, 2016 WL 147724, at *2 (N.D. Ill. 2016) (cleaned up). Illinois courts define "malpractice" as "failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury to the recipient of those services.'" *See Williams v. Athletico, Ltd.*, 2017 IL App (1st) 161902, 412 Ill. Dec. 124, 74 N.E.3d 1047, 1053 (2017) (cleaned up). "To determine whether a claim sounds in malpractice, a court may consider '(1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror; (2) whether the activity is inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish plaintiffs' case.'" *Johnson v. United States*, 2016 WL 3387156, at *11 (N.D. Ill. 2016) (quoting *Jackson v. Chicago Classic Janitorial & Cleaning Serv., Inc.*, 355 Ill. App. 3d 906, 291 Ill. Dec. 469, 823 N.E.2d 1055, 1057–58 (2005)). Here, Liebich attempts to distinguish his negligence claim from a malpractice claim, but he isn't convincing. *See* Pl.'s Resp., at 22 (Dckt. No. 188) ("Plaintiff does not allege a negligence claimed [sic] based on medical malpractice, but rather based on the negligent medical opinions regarding Plaintiff's role in Steven's death that was conveyed by the Doctor Defendants to law enforcement – the claim has nothing to do with the quality of care provided to Steven."). Liebich's claim relies on the physician defendants' "negligent medical opinions" and acts that "required them to apply their medical skills and medical judgment." *Id.* at 22–23. So Liebich's claim very likely qualifies as a medical malpractice claim, which generally precludes liability based on a third party. *See, e.g.*, *Murillo v. United States*, 504 F. Supp. 3d 875, 884 (N.D. Ill. 2020). That said, none of the Defendants argue that Liebich brings a medical malpractice claim, so the Court merely notes that it would be an independent ground for dismissal.

plaintiff's welfare." *See Farnik v. Chicago Police Dep't*, 2015 WL 13878225, at *3 (N.D. Ill. 2015).

Liebich has not stated a negligence claim, and he has not stated an aggravated negligence claim either. The Court grants the physician defendants' motion to dismiss Count IX (the negligence claim) and Count VIII (the willful and wanton claim).

### D. Absolute Immunity and State Actors

Finally, the physician defendants contend that Liebich's claims should be dismissed because Dr. Severin and Dr. Munoz are entitled to witness immunity and Illinois's absolute privilege for statements made pursuant to a judicial proceeding. Defendants also contend that the doctors' actions do not qualify as state action under section 1983, precluding Liebich's federal claims. Neither argument moves the needle.

First, Defendants already presented their theory of witness immunity in their first motion to dismiss, which they candidly admit. *See* Defs. Munoz and Severin's Mtn. to Dismiss Am. Cplt., at 6 (Dckt. No. 164) ("These defendants are respectful of this Court's previous finding that they are not entitled to immunity in this matter under the doctrine of witness immunity. . . . [T]hese defendants respectfully maintain that they are entitled to absolute witness immunity . . . ."). Defendants made the same argument, and this Court makes the same ruling. As this Court previously ruled, the physician defendants are not entitled to witness immunity.[5] *See* 3/22/21 Mem. Opin. and Order, at 7–8 (Dckt. No. 115).

---

[5] This Court acknowledges the ruling by another court in this district about the scope of witness immunity, including whether it extends to *preparations* for testimony, in addition to trial testimony itself. *See Hayes v. Narang*, 2020 WL 4815909, at *8 (N.D. Ill. 2020) ("Consequently, Dr. Narang is entitled to absolute immunity for challenges to his examination of A.N., his report which embodied those findings, and his testimony at the custody hearing."). Defendants can revisit that issue at summary judgment if they so choose, after the parties have gathered the facts.

The argument about the absolute litigation privilege also misses the mark. The privilege protects witnesses from *defamation* actions, not all forms of lawsuits. *See, e.g.*, *Gorman-Dahm v. BMO Harris Bank, N.A.*, 2018 IL App (2d) 170082, 419 Ill. Dec 719, 94 N.E.3d 257, 263 (2018) ("It has long been the recognized rule of law that whatever is said or written in a legal proceeding which is pertinent and material to the matters in controversy, is privileged, and no action of slander or libel can be maintained thereon.") (citation omitted).

Defendants provide no Illinois case law extending the absolute litigation privilege beyond defamation actions, and the Court cannot find support for such an extension either. *See Stone v. Washington Mut. Bank*, 2011 WL 3678838, at *16 (N.D. Ill. 2011) ("[Defendants] cite no Illinois case applying this privilege to claims outside of the defamation or libel context, such as plaintiffs' remaining state law claims of intentional infliction of emotional distress. Though some states have extended the absolute privilege to such claims, Illinois courts do not appear to have done so."); *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, 379 Ill. Dec. 626, 7 N.E.3d 52, 56 (2014) ("Illinois courts have not specifically discussed whether absolute immunity extends to claims for negligent infliction of emotional distress or breach of contract."); *see also MacGregor v. Rutberg*, 478 F.3d 790, 791 (7th Cir. 2007) ("The privilege mainly protects against suits for defamation . . . ."). Liebich does not bring a defamation claim, so the privilege does not apply.

Second, the Court previously rejected Defendants' argument that Dr. Severin and Dr. Munoz did not act under color of state law. Again, "the inquiry into whether a private citizen acted under color of state law for section 1983 purposes is 'necessarily factbound.'" *See* 3/22/21 Mem. Opin. and Order, at 10 (Dckt. No. 115) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). The same ruling applies here.

## II.     Rush University Medical Center

Liebich's amended complaint added Rush as a defendant.  Liebich asserts both federal and state law claims against Rush based on his claims against the physician defendants.  The Court begins with the federal causes of action.

### A.     Federal Claims – *Respondeat Superior*

Liebich admits that, under current law, his federal claims against Rush are doomed. Again, the claims against Rush are based on a theory of *respondeat superior*.  But there is no *respondeat superior* liability for municipalities and private corporations that provide state functions.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The parties don't tease it out, but they appear to agree that *Monell* applies to Rush because Liebich alleges that the two physicians conspired with the government and thus count as state actors.  *See* 3/22/21 Mem. Opin. and Order, at 10 (Dckt. No. 115) (concluding that a "conspiracy with the government is enough to render a private citizen a state actor").  "Plaintiff acknowledges that, under existing precedent, his *respondeat superior* theory of liability against Rush lies only for his state law claims, and that he may not recover from Rush for the Doctor Defendants' constitutional violations absent allegations of Rush's own unconstitutional policies." *See* Pl.'s Resp., at 18 n.8 (Dckt. No. 188).

Liebich's federal claims against Rush (Counts I, III, IV, and V) are dismissed because they rely on a theory of vicarious liability.

### B.     State Law Claims – Scope of Employment

Liebich also brings a basket of state law claims, including malicious prosecution (Count VI), intentional infliction of emotional distress (Count VII), willful and wanton conduct (Count

VIII), negligence (Count IX), civil conspiracy (Count X), and *respondeat superior* liability (Count XI).

Liebich isn't claiming that Rush did anything wrong independently. That is, Liebich is not claiming that Rush has liability for anything, except vicarious liability on the claims against the two physicians. So all of the claims against Rush fall under the umbrella of *respondeat superior*. *See* Pl.'s Resp., at 18 (Dckt. No. 188) ("Plaintiff does not advance any claims against Rush directly for its own institutional misconduct. Rather, Plaintiff's claims against Rush are solely on the basis of *respondeat superior* alleging its responsibility for misconduct committed by the Doctor Defendants.").

Under Illinois common law, an employer "may be held vicariously liable for the tort of an employee if the tort is committed within the scope of the employment." *See Richards v. U.S. Steel*, 869 F.3d 557, 565 (7th Cir. 2017) (citation omitted); *see also Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 308 Ill. Dec. 782, 862 N.E.2d 985, 991 (2007). So, "an employer is liable for an intentional tort committed by its employee only if the tort was in furtherance of his employment, that is, only if the employee's motive, or at least a motive, in committing the tort was to serve his employer." *Doe v. City of Chicago*, 360 F.3d 667, 670 (7th Cir. 2004). An employer's vicarious liability "extends to the negligent, willful, malicious, or even criminal acts of its employees when such acts are committed within the scope of the employment." *Weller v. Paramedic Servs. of Illinois, Inc.*, 297 F. Supp. 3d 836, 849 (N.D. Ill. 2018) (citing *Bagent*, 862 N.E.2d at 991).

"Under Illinois law, there are three necessary criteria for an employee's action to be within the scope of his employment. First, the relevant conduct must be of the kind that the employee was employed to perform. Second, the conduct must have occurred substantially

within the time and space limits authorized by the employment. And third, the conduct must have been motivated, at least in part, by a purpose to serve the employer." *Elston v. County of Kane*, 948 F.3d 884, 887 (7th Cir. 2020); *see also Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016). Vicarious liability does not apply to an employee "who acts purely in his own personal interest," but "a mixed motive may be enough to create liability." *See Elston*, 948 F.3d at 888.

The Court granted the physician defendants' motion to dismiss Liebich's negligence and willful and wanton claim (*i.e.*, an aggravated negligence claim). Rush cannot have vicarious liability on claims against the doctors when the claims against the doctors were dismissed. So, the Court dismisses the negligence and willful and wanton claims against Rush, too.

For the remaining claims (malicious prosecution, intentional infliction of emotional distress, and civil conspiracy), Rush challenges the third requirement of vicarious liability. Rush argues that Dr. Severin and Dr. Munoz did not perform any of their alleged actions "with an intent to benefit Rush." *See* Def. Rush's Mtn. to Dismiss Am. Cplt., at 14 (Dckt. No. 170). According to Rush, Liebich cannot state a claim for *respondeat superior* liability based on any state tort because the defendant physicians could not have acted with a motive to serve Rush.

But "[w]hether the employee's conduct was so unreasonable as to make his act an independent act of his own, rather than a mere detour or one incidental to employment, is a question of degree which depends upon the facts of the case." *See Lujano v. Town of Cicero*, 691 F. Supp. 2d 873, 889 (N.D. Ill. 2010) (citing *Davila v. Yellow Cab Co.*, 333 Ill. App. 3d 592, 267 Ill. Dec. 348, 776 N.E.2d 720, 728 (2002)). Indeed, "[b]ecause scope of employment is a fact-intensive issue, Illinois courts have held that it is generally inappropriate to resolve this issue at the motion to dismiss or summary judgment stage." *See Golbert v. Aurora Chicago*

24

*Lakeshore Hosp., LLC*, 2021 WL 952528, at *11 (N.D. Ill. 2021) (citation omitted); *see also Albright v. Am. Greetings Corp.*, 2020 WL 3303001, at *3 (N.D. Ill. 2020) ("[O]ften scope of employment is a fact question inappropriate for resolution at the motion to dismiss stage."); *Blasberg v. City of Chicago*, 2018 WL 3046867, at *3 (N.D. Ill. 2018) ("[M]atters regarding indemnification are not often resolved on the pleadings.").

Liebich alleges that the defendant physicians "reached false medical opinions about the cause of Steven's death and Plaintiff's role in causing him fatal injuries, and then conveyed this false information to law enforcement officers who were at the hospital investigating Steven's death." *See* Pl.'s Resp., at 23 (Dckt. No. 188). The complaint does not preclude the possibility that the physician defendants acted, at least in part, out of a motivation to serve Rush. It may be unlikely, but "[t]he plausibility standard is not akin to a 'probability requirement.'" *See Iqbal*, 556 U.S. at 678.

Based only on the pleadings – and drawing all reasonable inferences in Liebich's favor – the physician defendants plausibly acted with the requisite motive to serve Rush, allowing Liebich to pursue *respondeat superior* liability. So the Court denies Rush's motion to dismiss Liebich's claims for malicious prosecution, intentional infliction of emotional distress, and civil conspiracy.

Rush also moves to dismiss Liebich's independent claim for *respondeat superior* liability (Count XI). In Illinois, "*respondeat superior* is not by itself a cause of action." *See Jones v. UPS Ground Freight, Inc.*, 2016 WL 826403, at *3 (N.D. Ill. 2016); *see also Winn v. City of Chicago*, 2022 WL 80272, at *7 (N.D. Ill. 2022) ("[R]espondeat superior is not a basis for an independent claim; it is instead a theory on which the City can be held liable for torts committed by officers."); *Wilson v. Edward Hosp.*, 2012 IL 112898, 367 Ill. Dec. 243, 981 N.E.2d 971, 980

25

(2012) (holding that actual agency and apparent agency are not causes of action separate from an underlying negligence claim because "vicarious liability is not itself a claim or cause of action").

Liebich can pursue the surviving state tort claims against Rush under a theory of *respondeat superior*, but he lacks an independent cause of action for vicarious liability against Rush. The Court dismisses Count XI as duplicative.

Rush also advances the same arguments that the physicians made (*i.e.*, timeliness,[6] witness immunity, Illinois' absolute privilege, Dr. Severin and Dr. Munoz were not state actors). The Court makes the same ruling.[7]

## Conclusion

The physician defendants' motion to dismiss is granted in part and denied in part. The Court grants the motion to dismiss Count VIII (willful and wanton conduct) and Count IX (negligence). The Court dismisses Count III (unlawful pretrial detention) in part, only to the extent that it invoked the Fourteenth Amendment. The remainder of the motion is denied, leaving in place Count I (due process under the Fourteenth Amendment), Count III (unlawful pretrial detention under the Fourth Amendment), Count IV (failure to intervene), Count V

---

[6] Rush asserts, in passing, that the Illinois statute of repose applies to Liebich's negligence claim. *See* Def. Rush's Mtn. to Dismiss Am. Cplt., at 6 (Dckt. No. 170). Then, in its reply brief, Rush argues for the first time that the *Heck* doctrine does not apply to the Illinois statute of repose, and that the statute of repose bars all of Liebich's state law claims. *See* Def. Rush's Reply, at 3–5 (Dckt. No. 195). As a general matter, defendants cannot bring up new arguments in a reply brief. *See, e.g.*, *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011).

[7] In its reply brief, Rush argues for the first time that Liebich's claim accrued when the state court vacated his conviction on September 14, 2018, not when the court entered a dispositive *nolle prosequi* on April 17, 2019. *See* Def. Rush's Reply, at 3 (Dckt. No. 195). Liebich moved to file an amended complaint, adding Rush as a defendant, on April 16, 2021. *See* Am. Cplt. (Dckt. No. 131). So, according to Rush, Liebich's claims would be time barred even if the Court applies the *Heck* doctrine. A party waives or forfeits arguments raised for the first time in a reply brief. *See Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011).

(conspiracy), Count VI (malicious prosecution), Count VII (intentional infliction of emotional distress), and Count X (conspiracy) against the physician defendants.

Rush's motion to dismiss is granted in part and denied in part. The Court grants the motion to dismiss Counts I (due process under the Fourteenth Amendment), Count III (unlawful pretrial detention under the Fourth Amendment and the Fourteenth Amendment), Count IV (failure to intervene), Count V (conspiracy), VIII (willful and wanton conduct), Count IX (negligence), and Count XI (*respondeat superior*). The remainder of the motion is denied, leaving Count VI (malicious prosecution), Count VII (intentional infliction of emotional distress), and Count X (conspiracy) against Rush.

Date:   March 24, 2022

Steven C. Seeger
United States District Judge